IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| FLEXI-VAN LEASING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:15-cv-1787-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| THE TRAVELERS INDEMNITY COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

This matter is before the court on defendant The Travelers Indemnity Company's ("Travelers") renewed motion for summary judgment, ECF No. 128. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This declaratory judgment action and insurance coverage case stems from an underlying action that was before this court, <u>Vititoe v. Bridgestone Americas Tire Operations, Inc.</u>, Case No. 2:12-cv-01844-DCN ("underlying action"), where plaintiff Flexi-Van Leasing, Inc. ("Flexi-Van") was one of the named defendants. In the underlying action, Charles Vititoe ("Vititoe") alleged that he was working on a semi-trailer's rim assembly on the truck's right rear tire when the rim assembly exploded and injured him. Vititoe and his wife brought several causes of action against Flexi-Van because the rim assembly that injured Vititoe was affixed to a chassis owned by Flexi-Van.

At the time of Vititoe's injury, the chassis was on lease to Zim Integrated Shipping Services Company, Inc. ("Zim"). Zim contributed the chassis to the South

1

Atlantic Consolidated Chassis Pool ("SACP"). Interstar North America, Inc., ("Interstar") entered into a Master Maintenance and Repair Agreement ("the Agreement") with Flexi-Van—as SACP manager—to be the SACP chassis maintenance and repair vendor. Pursuant to the Agreement, Interstar agreed to indemnify, defend, and hold harmless SACP and Flexi-Van as its manager from suits arising from or in connection with Interstar's negligence in complying with Interstar's duties under the Agreement. Appendix B of the Agreement required Interstar to name SACP and its manager as additional insureds on Interstar's insurance policy and maintain general liability insurance of at least $10,000,000 per occurrence. Interstar fulfilled this requirement by obtaining a commercial insurance policy ("the Policy") from Travelers and adding Flexi-Van as an additional insured.

Pursuant to the Agreement and the Policy, Flexi-Van tendered its defense in the underlying action to Travelers. Initially Travelers agreed to defend and indemnify Flexi-Van and informed Flexi-Van that Mark Wall ("Wall") would be Flexi-Van's attorney. On March 27, 2013, Travelers sent Flexi-Van a reservation of rights letter ("Reservation of Rights Letter") that explained that Travelers would not defend or indemnify Flexi-Van for issues outside of Travelers's coverage. Travelers explained that this could occur if Flexi-Van were liable as a result of its own independent acts, omissions, or exclusions, or if the underlying action fell within the Policy's "Aircraft, Auto or Watercraft" exclusion. ECF No. 34-7 at 4. On June 28, 2013, Flexi-Van expressed its opinion that there was a conflict between Travelers and Flexi-Van so that Wall could no longer protect Flexi-Van's interests. In particular, Flexi-Van asked Wall to bring Interstar as a third-party defendant in the underlying action, and Wall failed to do so, stating that "Travelers has

not directed me to start a 3rd party [action] against them and will not pay for it." ECF No. 34-8 at 3. As a result, Flexi-Van terminated Wall's representation and hired a substitute counsel. Id. at 2. On July 26, 2013, Travelers sent Flexi-Van a letter informing Flexi-Van that it would not pay for Flexi-Van's substitute counsel. ECF No. 34-10 at 2. Flexi-Van then filed the instant suit on April 24, 2015. Flexi-Van's complaint brings the following causes of action: (1) a declaratory judgment that it is entitled to a defense and indemnity from Travelers for the claims asserted in the underlying action; (2) breach of contract for failing to defend and indemnify; and (3) breach of the implied obligation of good faith and fair dealing. Compl. ¶¶ 18–44.

In the underlying action, Flexi-Van filed a third-party complaint against InterStar, bringing causes of action for (1) breach of contract for failure to defend and indemnify, (2) contractual indemnity, (3) equitable indemnity, (4) negligent hiring, (5) negligent supervision, and (6) negligent training ("third-party underlying action"). In response, InterStar brought a third-party counterclaim against Flexi-Van, alleging that Flexi-Van breached the Agreement by terminating the defense provided by Interstar. The third-party underlying action was bifurcated from the underlying action, and a trial on the third-party underlying action was commenced in February 2018. On February 8, 2018, the jury in the third-party underlying action returned a verdict against Flexi-Van on Flexi-Van's breach of contract and contractual indemnity claims against InterStar,[1] finding that Flexi-Van did not prove by a preponderance of the evidence that Interstar breached the Agreement by failing to pay Flexi-Van's defense costs for its substitute counsel. The

---

[1] The jury also returned a verdict against Flexi-Van in Flexi-Van's negligent hiring and negligent supervision claims.

jury also returned a verdict in favor of Interstar on Interstar's breach of contract counterclaim, finding that Flexi-Van breached the Agreement by hiring substitute counsel.

The parties in the instant case first filed their motions for summary judgment in June 2017 before the trial in the third-party underlying action. ECF Nos. 80–81. The court granted in part and denied in part Travelers's motion and denied Flexi-Van's motion. ECF No. 95. Then after the jury rendered a verdict in the third-party underlying action, Travelers filed a renewed motion for summary judgment on June 12, 2018. ECF No. 118. The court issued an order on March 18, 2019 that denied the motion without prejudice. ECF No. 127. However, the court offered the parties an opportunity to brief a related issue, discussed below, in a renewed motion for summary judgment. As such, Travelers filed its renewed motion for summary judgment on May 14, 2019. ECF No. 128. Flexi-Van responded on June 26, 2019, ECF No. 133, and Travelers replied on July 10, 2019, ECF No. 136. The motion is fully briefed and ripe for review.

## II.   STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

There have now been three rounds of briefing for summary judgment in this case. The first round concluded with an order dated December 7, 2017. That order left one discrete issue to be tried, relating to the breach of contract and declaratory judgment claims, which is discussed in more detail below. The second round of summary judgment briefing involved Travelers arguing that, after the jury verdict in the third-party underlying action found that Flexi-Van breached the Agreement, collateral estoppel required that the court also find that Flexi-Van breached the Policy when Flexi-Van fired Wall and hired substitute counsel. The court held on March 18, 2018 that collateral estoppel could not apply because the Agreement and the Policy are two separate contracts, and the jury findings in the third-party underlying action regarding Flexi-Van's conduct were not specific enough to apply the verdict about the Agreement to the Policy.

The court then offered the parties the opportunity to brief the issue of what impact a breach of the Agreement would have on the Policy. Instead, Travelers filed a renewed motion for summary judgment that largely reiterated arguments it made during previous

rounds of briefing. Therefore, the court remains unconvinced that the jury verdict in the third-party underlying action can be applied here to resolve this case.

The remaining issue is whether Travelers breached its Policy by failing to pay for Flexi-Van's independently obtained counsel after Flexi-Van fired Wall. This hinges on whether an actual conflict of interest existed in Wall representing Flexi-Van while being paid by Travelers. If a conflict of interest did exist, then Flexi-Van was justified in firing Wall, and Travelers, pursuant to its duty to defend, would still be obligated to pay the defense costs of Flexi-Van's independently obtained counsel and indemnify Flexi-Van for its settlement costs in the underlying action. If no actual conflict of interest existed, then Travelers did not breach its duty to defend or its duty to indemnify. In the court's first summary judgment order, dated December 7, 2017, the court denied summary judgment as to the breach of contract and declaratory judgment claims because it found that a genuine issue of material fact existed as to whether an actual conflict existed. However, upon further review of the record in this case, the court finds that there is no such genuine issue of material fact and that summary judgment in favor of Travelers is warranted.

Flexi-Van originally and primarily argued that the conflict of interest arose when Travelers issued the Reservation of Rights Letter. In the December 7, 2017 order, the court held that the Reservation of Rights Letter did not create a per se conflict, relying on Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365 (4th Cir. 2005).[2] But the court went on to find that "[t]here is, however, a genuine issue of

---

[2] In the most recent round of summary judgment briefing, Flexi-Van seems to suggest that there is still a question as to whether the Reservation of Rights Letter created a conflict. See ECF No. 133 at 7–8 ("If a conflict of interest arose by virtue of the

material fact as to whether an actual conflict arose such that Travelers breached its duty to defend." ECF No. 95 at 22. The court explained that Flexi-Van and Travelers had a common interest in proving that Vititoe was at fault in the underlying action, but if that defense failed, then Flexi-Van's and Travelers's respective interests may diverge. The divergence could have occurred because the Reservation of Rights Letter suggested that Travelers was only obligated to provide coverage for the "negligence, gross negligence, or willful conduct of Interstar" and had no obligation to provide coverage for any damage that resulted from Flexi-Van's independent acts. As the court explained in its order, Travelers <u>could have</u> reached a point in the underlying action in which Travelers would have an interest in ensuring that Flexi-Van's liability was based on Flexi-Van's own conduct, not Interstar's conduct, because then Travelers could disclaim coverage. This potential divergence of interests, the court theorized, could influence the litigation strategy employed by Wall. Therefore, the remaining issue is whether an actual conflict arose, justifying Flexi-Van's termination of Wall and requiring Travelers to pay the costs associated with Flexi-Van's substitute counsel.

Upon further review, the court has determined that the potential divergence of interests that it previously discussed does not create a genuine issue of material fact. Insurers generally have both the right and the duty to defend their insured. During the representation of an insured, it is the ethical duty of counsel to conduct a conflicts

---

issuance of the March 27, 2013[ ] reservation of rights letter, Travelers' [sic] breached the Policy by refusing to allowed Flexi to select its own counsel and direct its defense and Flexi is entitled to recover."). To be clear, the court <u>already held</u> that the Reservation of Rights Letter did not create a conflict. ECF No. 95 at 22 ("the March 27, 2013 letter does not in and of itself constitute a breach of Travelers's duty to defend Flexi-Van; Travelers was merely reserving its rights, which does not create an actual conflict per se under South Carolina law").

analysis and withdraw as counsel if a conflict exists when representing the rights of the insured while being paid by the insurer. Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., LP, 336 F. Supp. 2d 610, 615 (D.S.C. 2004), aff'd Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365 (4th Cir. 2005) (citing Rule 5.4, RPC, Rule 407, SCACR). If a conflict exists, then the insured can select its own counsel and is entitled to receive reimbursement for defense costs from the insurer, who still has a duty to defend the insured. See BP Oil Co. v. Federated Mut. Ins. Co., 496 S.E.2d 35, 41 (S.C. Ct. App. 1998) (explaining that when there is a conflict of interest between an insurer and its insured, an insurer can still fulfill its duty to defend by reimbursing the insured for the insured's independently selected counsel).

However, "the mere possibility of a conflict does not automatically trigger the right of the insured to select counsel of its own choosing." Twin City Fire Ins. Co., 433 F.3d at 374 n.3 (citing 3 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 29.21, at 911 (2005 ed.) ("Theoretical conflicts often are present. The possibility of a conflict occurring, however, does not entitled the insured to select counsel and control the defense.")); see also id. at 374 ("The record reflect[ed] that the defendants ousted the insurance companies from their defense long before any hypothetical conflict crystalized into an actual one warranting the insured's selection of counsel at the insurers' expense." (emphasis added)); Twin City Fire Ins. Co., 336 F. Supp. 2d at 626 ("The court further finds that a potential for a conflict of interest simply is not sufficient to trigger an insurer's obligation to pay for independent counsel of an insured's own choosing."). In addition, Twin City Fire Ins. Co. suggests that should a conflict arise, it is the responsibility of the attorney to conduct a conflicts analysis and then withdraw as counsel

8

if she determines that a conflict does exist. See Twin City Fire Ins. Co., 336 F. Supp. 2d at 616 ("Members of the South Carolina bar are charged with the responsibility of properly determining whether an actual or potential conflict exists and, if so, whether withdrawal from the representation is required. Any conflict of interest determination in this case should have been made by [the attorney], not [the insured]."). This is consistent with an attorney's ethical obligations under the South Carolina Rules of Professional Conduct. See Twin City Fire Ins. Co., 433 F.3d at 373 ("Rigorous ethical standards govern South Carolina attorneys. Rule 1.8(f) of the South Carolina Rules of Professional Conduct mandates that a lawyer cannot accept compensation for representing a client from a third party unless certain conditions are met, including that the lawyer's judgment must remain independent.").

In the court's December 7, 2017 order, the court hypothesized about the potential for a conflict to arise, but in order for Travelers to be obligated to pay Flexi-Van's defense costs, an actual conflict must have existed at the time that Flexi-Van replaced Wall with its own attorney. The court's discussion about a potential conflict, which it held created a genuine issue of material fact, was hypothetical because Travelers and Flexi-Van still had a common interest in proving Vititoe's comparative fault when Flexi-Van fired Wall. The conflict contemplated by the court had not yet been realized. If Travelers and Flexi-Van's respective interests had diverged, then an actual conflict could have existed, justifying Wall's termination. But Flexi-Van acted prematurely by firing Wall before the interests diverged and an actual conflict arose. Moreover, it was Wall's ethical obligation to determine if a conflict existed and his decision to withdraw as counsel, not Flexi-Van's. See Twin City Fire Ins. Co., 336 F. Supp. 2d at 616 ("Any

9

conflict of interest determination in this case should have been made by [the insured's attorney], not [the insured]."). It appears that Flexi-Van terminated Wall before he had the opportunity to decide whether he needed to withdraw as counsel on the basis of a conflict of interest.

The court acknowledges that it previously held that there was a genuine issue of material fact as to whether an actual conflict existed due to a potential divergence of Travelers's and Flexi-Van's interests. However, upon further review, the potential for conflict discussed in the December 7, 2017 order was just that—a <u>potential</u> for conflict. And Fourth Circuit case law is clear that a conflict must <u>actually</u> exist prior to the withdrawal or termination of counsel. Because the court only discussed a genuine issue of material fact as to this potential for conflict, it denied Travelers's motion for summary judgment on this issue and did not address the other alleged sources of conflict argued by Flexi-Van in its motion for summary judgment. Upon determining that this potential for conflict did not create a genuine issue of material fact, the court must now consider the other sources of conflicts originally argued by Flexi-Van to determine if summary judgment is warranted or if this case should move forward to trial.

In the first round of summary judgment briefing, Flexi-Van argues that an actual conflict arose by virtue of: (1) Travelers's issuance of the Reservation of Rights Letter; (2) Wall's alleged refusal to follow Flexi-Van's instructions; (3) Wall "ma[king] it clear that he was taking his instructions from Travelers" and not from Flexi-Van; (4) Wall's refusal to assert a claim against Interstar; and (5) Travelers's refusal to instruct Wall to bring a third-party action against Interstar. ECF No. 81-1 at 72.

Taking each of Flexi-Van's sources of conflict in turn, the court has already held that the Reservation of Rights Letter did not create a conflict. All of the remaining sources of conflict identified by Flexi-Van relate to Flexi-Van's desire to file a third-party action against Interstar and Travelers's refusal to pay Wall to do so unless Flexi-Van paid the fees attributable to the third-party action. The facts surrounding this issue are undisputed. Flexi-Van instructed Wall to file a third-party action against Interstar, but Wall refused to do so. ECF No. 46-1 at 15–16. According to Flexi-Van, Wall told Flexi-Van that he took instructions from Travelers, not Flexi-Van, and that Travelers had not instructed Wall to file the third-party action. Id. Indeed, Wall told Flexi-Van that Travelers would not pay for him to bring a third-party action against Interstar. ECF No. 86-7 at 3. Wall did offer to bring the action on behalf of Flexi-Van but clarified that Flexi-Van would be responsible for paying his fees and costs. Id.

Travelers explains that it did not authorize the third-party action because it believed that initiating a third-party action did not fall within the realm of its duty to defend and was therefore beyond the scope of the Policy. In making this argument, Travelers relies on the South Carolina Rules of Professional Conduct, which state that "[w]hen a lawyer has been retained by an insurer to represent an insured, for example, the representation may be limited to matters related to the insurance coverage." Rule 1.2, Comment 6, RPC, Rule 407, SCACR. In contrast, Flexi-Van believes that Travelers did not authorize the third-party action because it did not want to expose its named insured, Interstar, to liability and did not want to incur costs for Interstar's defense in the third-party action. In essence, Flexi-Van argues that Travelers put the interests of its named insured, Interstar, over the interests of its additional insured, Flexi-Van.

11

The question that arises is whether Wall's failure to bring a third-party action based on Travelers's instructions and despite Flexi-Van's request that he do so created a conflict of interest. This conflict of interest would allegedly exist by virtue of a conflict between Wall's obligations to Flexi-Van, who wanted to bring the third-party action, and Wall's obligations to Travelers, who did not authorize Wall to bring the third-party action. As an initial matter, it is important to clarify that, given the nature of the relationship between Flexi-Van, Travelers, and Wall, Wall's representation of Flexi-Van was always limited by the scope of the Policy. Travelers would not pay Wall to bring a third-party action against Interstar because Travelers believed that it was not within the scope of Policy and Travelers's duty to defend. Therefore, Wall's "refusal" to bring a third-party action against Interstar was not an independent decision made by Wall but rather was dictated by whether initiating a third-party action was within the scope of his representation pursuant to the Policy. If Wall had followed Flexi-Van's instructions and filed the third-party action against Interstar, Travelers would not have paid Wall for his work. Indeed, the fact that Wall offered to initiate the third-party action on behalf of Flexi-Van illustrates this point. Wall was willing to file the third-party action; however, he would only do so if Flexi-Van paid him because Travelers refused to cover the expense.

Therefore, the refusal to initiate a third-party action against Interstar arose from Travelers's refusal to pay Wall to file the third-party action, not from any independent decision-making on the part of Wall. As discussed above, Travelers argues that bringing a third-party action on behalf of Flexi-Van falls outside of the scope of its duty to defend Flexi-Van under the Policy, meaning that it was not required to pay Wall to initiate the

third-party action. The question then becomes whether an insurer's interpretation of the scope of its defense, as required by its insurance policy, can be viewed, as a matter of law, as creating a conflict of interest that would warrant the insured hiring its own counsel and demanding that the insurer pay for it. The interpretation at issue here is whether Travelers's duty to defend included the duty to initiate a third-party action against other potentially liable parties. South Carolina courts have not addressed whether an insurer's duty to defend includes initiating third-party actions on behalf of the insured. However, the court need not confront this issue because regardless of the outcome, there appears to be no basis in South Carolina law to support the finding of an existence of a conflict of interest in this scenario.

If initiating a third-party action is not within the scope of an insurer's duty to defend, the court fails to see how a conflict of interest could be created by Travelers refusing to authorize Wall to go outside of the scope of his representation. In other words, it would be odd for a conflict of interest to exist by virtue of an insurer ensuring that the representation of counsel it hired to represent an insured remained within the scope of the insurance policy's coverage. Finding a conflict of interest in this scenario would destroy the ability of an insurer to hire counsel to defend its insured solely within the scope of an insurance policy. It would also incentivize insureds to argue that a conflict of interest existed when counsel refused to act outside of the scope of his representation so that insureds could hire counsel of their choosing at the expense of the insurers.

However, even if Travelers did breach its duty to defend by refusing to allow Wall to bring a third-party action against Interstar, there appears to be no basis in South

13

Carolina law to find the existence of a conflict of interest based on this type of breach of a duty to defend. Flexi-Van cites to no law that stands for the proposition that a conflict of interest is created when an insurer breaches allegedly its duty to defend by improperly refusing to pay counsel to carry out the full defense of an insured. The court has also conducted extensive research on this issue and has found no law that contemplates a conflict of interest in this situation. Indeed, whether a conflict of interest exists when an attorney represents an insured while being paid by the insurer is a completely different issue than whether an insurer breached its duty to defend by limiting the scope of the attorney's representation. Again, it is important to remember that, pursuant to an insurer-insured-attorney relationship, Wall was not given free rein to do whatever Flexi-Van deemed necessary to defend Flexi-Van in the underlying action. Instead, because Wall was being paid by Travelers, Wall's representation of Flexi-Van was limited to the scope of the Policy. If Flexi-Van was unsatisfied with Travelers's determination that initiating a third-party action as not within the scope of Travelers's duty to defend, then Flexi-Van should have contested that determination. Instead, Flexi-Van argued that Wall, following the instructions of Travelers regarding the scope of Wall's representation, created an actual conflict of interest that warranted Wall's termination. But Flexi-Van has not provided nor has the court found any legal basis that supports this conclusion.

In sum, Flexi-Van's argument that Wall's failure to bring a third-party action created a conflict of interest that required Wall's termination is without legal basis under South Carolina law; therefore, the court holds that Wall's and Travelers's actions surrounding Wall's refusal to bring a third-party action did not create an actual conflict. Therefore, there is no genuine issue of material fact as to whether an actual conflict

existed, and Travelers did not breach its duty to defend by refusing to pay for the cost of Flexi-Van's substitute counsel.

As for indemnification, when an insured improperly ousts counsel that was retained by the insurer and subsequently settles the underlying case, the insured is not entitled to indemnification for the costs of settlement. Twin City Fire Ins. Co., 336 F. Supp. 2d at 624–25 (holding that when an insured improperly ousts the attorney hired by the insurer and the insured is not entitled to seek reimbursement of defense costs, "[t]he same result follows, as a matter of course, regarding the indemnification claim"). In reaching this holding, the Twin City Fire Ins. Co. court explained that the insurance policy at issue provided "that the insureds shall not 'voluntarily . . . incur any expense, other than for first aid, without [the carrier's] consent.'" Id. at 625. Because the insured settled the underlying case after firing the attorney hired by the insurance company, the insured violated this provision. As a result, the insured was not entitled to indemnification for the settlement costs it incurred. Id. The same reasoning applies here. The Policy states that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Travelers's] consent." ECF No. 1-5 at 12. As discussed above, there is no genuine issue of material fact as to whether an actual conflict of interest existed when Flexi-Van terminated Wall. Because Flexi-Van fired Wall without the existence of an actual conflict of interest and went on to settle the underlying action with Flexi-Van's substitute counsel, Flexi-Van settled the underlying action without Travelers's consent. As such, pursuant to the holding in Twin City Fire Ins. Co., Flexi-Van is not entitled to indemnification for settlement costs.

## IV. CONCLUSION

For the foregoing reasons the court **GRANTS** Travelers's renewed motion for summary judgment.

**AND IT IS SO ORDERED.**

                                      **DAVID C. NORTON**
                                      **UNITED STATES DISTRICT JUDGE**

**July 25, 2019**
**Charleston, South Carolina**